UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Diane Marie Mierthew,

    Plaintiff,

v.

City of Wayne Police Officer Robert
Amore, and The City of Wayne,

    Defendants.
                                              /

Case No. 07-15277

Hon. Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [24]**

Plaintiff Diane Mierthew filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendant Robert Amore of the Wayne Police Department used excessive force during her booking in violation of the Fourth Amendment. Plaintiff further alleges that Defendant City of Wayne is also liable because it ratified Amore's misconduct. This matter comes before the Court on Defendants' motion for summary judgment. The Court held oral argument on April 29, 2009. Being fully advised in the premises and having reviewed the pleadings, and as stated on the record, the Court hereby DENIES Defendant Robert Amore's motion for summary judgment because genuine issues of material fact remain. The Court took Defendant City Of Wayne's motion under advisement, and for the reasons set forth below, now GRANTS Defendant City of Wayne's motion for summary judgment.[1]

**I.    Facts**

---

[1] The Court also GRANTS Plaintiff's motion to add exhibit to answer opposing Defendants' motion for summary judgment [42].

This lawsuit arises from Plaintiff's May 19, 2007 arrest. The facts giving rise to Plaintiff's claim against the City of Wayne are as follows.

**Plaintiff's Arrest**

On May 18, 2007, Plaintiff's daughter, Ronnie Mierthew attended senior prom. Ronnie and her friends gathered at Plaintiff's home at 5.00 or 5.30 that evening, and a limousine picked them up at 7.00 p.m. to take them to the prom. (Def.'s Ex. 1, at 30-33.) While waiting for the seniors to return, and over the course of the evening, Plaintiff drank approximately 6-10 beers—an amount she admitted was "way too much" for her. (Defs.' Ex. 1, at 41-44; Pl.'s Ex. 9, at 41.) The limousine carrying the prom attendees returned to Plaintiff's home between 2.00 and 3.00 a.m. on May 19.

At approximately 2.40 a.m. on May 19, Officer Robert Amore of the Wayne Police Department was in the vicinity of Plaintiff's home handling a parking violation. (Defs.' Ex. 2, at 1.) At that time, he became suspicious that underage individuals were consuming alcoholic beverages inside the residence. (Defs.' Ex. 2, at 2; Defs.' Ex. 3, at 23.) Officer Amore knocked at the door, but Plaintiff swore at him and told him to get a warrant if he wanted to enter. (Defs.' Ex. 2, at 2; Defs.' Ex. 1, at 48.)

At approximately 7.00 a.m., Officer Amore returned with a search warrant, broke down Plaintiff's door, and entered her home accompanied by two officers. (Defs.' Ex. 2A; Pl.'s Ex. 9, at 49.) The officers issued citations for Minor in Possession to eight individuals at the home, including Plaintiff's daughter Ronnie and a family friend, Aaron Roche. The officers woke Plaintiff who was asleep in her bed and escorted her out of her bedroom. (Pl.'s Ex. 9, at 49.) When Plaintiff reached for a cigarette instead of being seated as she

was instructed, one of the officers took her to the ground. (Pl.'s Ex. 9, at 53, 55.) Plaintiff testified that she was still intoxicated. (Pl.'s Ex. 9, at 56.)

The officers arrested Plaintiff for furnishing alcohol to minors, resisting arrest, and interfering with officers in the performance of their duties, and arrested Ronnie Mierthew and Aaron Roche for refusing a PBT. Plaintiff, Ronnie, and Aaron Roche were placed in the police van in handcuffs and driven to the City of Wayne Police Department. (Pl.'s Ex. 9, at 61-64.)

**Events Occurring in the Wayne Police Department Booking Room**

Upon arrival at the station at approximately 8.22 a.m., Officers Amore, Corney, and Kirschweng escorted Plaintiff, Ronnie, and Aaron into the booking room and seated them on a bench. (Pl.'s Ex. 9, at 66-67.) This room is equipped with a surveillance camera, which takes pictures in two-second intervals. The room is also equipped with a microphone that records in a continuous feed. The camera and microphone captured the events that are the subject of this lawsuit.[2]

In the booking room, Plaintiff continued to "yell[] at the officers," "pick[] on [them] and be[] mean and nasty," and "pok[e] fun at anything physical on them that [she] could poke fun at." (Pl.'s Ex. 9, at 68.) Plaintiff testified that she was intoxicated at the station. (Pl.'s Ex. 9, at 27.)

Plaintiff refused to give her name or answer questions, so Officer Amore decided to place her in a cell and try to complete the booking process later. (Pl.'s Ex. 6, at 46-48.)

---

[2] Plaintiff has created a DVD, synchronizing the audio and visual feeds from that morning, which Defendants have submitted as an exhibit to their motion. (Defs.' Ex. 7.) Plaintiff has also submitted as an exhibit to her response, still photographs of the same time-frame. (Pl.'s Ex. 11.)

Officer Amore instructed Plaintiff to go over to the wall so that a female dispatcher could search her before he placed her in a cell. When Plaintiff refused, Amore led Plaintiff over to the wall using one hand. (Pl.'s Ex. 6, at 55; Defs.' Ex. 2, at 4; Defs.' Ex. 7; Pl.'s Ex. 8, at 46.)

Officer Amore faced Plaintiff toward the wall, with her feet approximately eighteen inches from the wall. Amore stood behind her, holding her handcuffed wrists, and bent her forward so that her forehead touched the wall. (Pl.'s Ex. 6, at 52-53; Pl.'s Ex. 7.)[3] Plaintiff continued her verbal assault on Amore, while her daughter screamed for her to stop. (Defs.' Ex. 7.) Officer Amore used his foot to spread Plaintiff's feet apart, so that she could be searched. (Pl.'s Ex. 8, at 47; Defs.' Ex. 7.) Plaintiff testified that her wrists, arms, and face hurt while Officer Amore was positioning her on the wall. (Pl.'s Ex. 9, at 80.)

Plaintiff's degree of resistance during Officer Amore's attempt to position her at the wall for the pat down is disputed. Plaintiff testified that she did not resist at all and also denies kicking or attempting to strike Officer Amore. (Pl.'s Ex. 9, at 81.) Aaron Roche testified that a struggle ensued between Officer Amore and Plaintiff because Plaintiff would not spread her legs enough for him, but that she did not kick Amore. (Defs.' Ex. 6, at 31-32.) According to Roche, Plaintiff kept moving her legs closer together every time Officer Amore moved them apart until Plaintiff "decided not to let him anymore." (Defs.' Ex. 6, at 32.) Officer Amore testified that while he was trying to position Plaintiff on the wall, she swung her elbows at him and turned to hit him but that he redirected her by placing his hand under her elbow. (Pl.'s Ex. 8, at 42, 62.) Officer Amore testified that in addition

---

[3] Officer Corney testified that this position is designed to help secure an officer's safety by keeping the arrestee off balance. (Pl.'s Ex. 6, at 52-3.)

4

elbowing him, Plaintiff also kicked him. (Pl.'s Ex. 8, at 54.) Officer Corney testified that Plaintiff kicked her foot back at Officer Amore two to four times. (Pl.'s Ex. 6, at 53-54.) Officer Karson could only see Plaintiff from mid-torso up and testified that Plaintiff struggled with Officer Amore by "shifting, moving around a lot, [and] trying to turn around as he was trying to put her face towards the wall." (Pl.'s Ex. 7, at 26-27.)

Officer Amore then raised Plaintiff's elbows above her head. (Pl.'s Ex. 8, at 50-51, 58-59; Defs.' Ex. 7.) Plaintiff testified that this maneuver made her arms feel "like they were going to fall off." (Pl.'s Ex. 9, at 81.) Amore held Plaintiff in this position for two to four seconds.[4]

Officer Amore told Plaintiff to stop resisting or he would have to bring her to the ground. (Defs.' Ex. 5, at 55; Defs.' Ex. 7; Pl.'s Ex. 8, at 55.) Plaintiff responded that he should take her to the ground. (Defs.' Ex. 7.) Officer Amore then employed an arm bar takedown to bring Plaintiff to the ground. (Defs.' Ex. 3, at 55; Ex. 7.) Plaintiff testified that Officer Amore swung her from the wall over to the ground. (Pl.'s Ex. 9, at 82.) The maneuver ended with Plaintiff on the ground and Officer Amore leaning over her. (Defs.' Ex. 7.)

According to Plaintiff, she lost consciousness for a few seconds when she hit the floor. (Pl.'s Ex. 9, at 26, 100-01.) A female dispatcher patted Plaintiff down while she was on the ground. (Defs.' Ex. 7.) When Plaintiff sat up soon thereafter, officers observed that she was bleeding from the face and nose and noticed a pool of blood on the floor. (Pl.'s

---

[4] At no point during this struggle did Officer Amore ask for help from the two other officers present. (Pl.'s Ex. 6, at 50-53; Pl.'s Ex. 7, at 29; Defs.' Ex. 7.) Officer Amore testified that he had not been aware that Officer Corney was standing next to him and that Officer Kirschweng was dealing with Ronnie and Aaron. (Pl.'s Ex. 8, at 72.)

Ex. 6, at 61; Pl.'s Ex. 3, at 22.)  Officer Amore called EMS, and paramedics transported Plaintiff to the hospital where she was treated and released back to the custody of the Wayne police at approximately 1.00 p.m. that day.  (Pl.'s Ex. 9, at 25.)

**Plaintiff's Injuries**

Plaintiff suffered head lacerations, a nosebleed, and six fractures to the bones in her face. (Pl.'s Ex. 9, at 135-36; Pl.'s Ex. 15.)  Plaintiff continues to be treated for carpal tunnel syndrome in her wrists and pain in her elbows, arms, shoulders, and neck, which she attributes to her treatment by Amore in the booking room.  (Pl.'s Ex. 9, at 110-15; Pl.'s Ex. 14.)  As a result of the fractured bones in her face, Plaintiff experiences numbness on the right side of her face.  (Pl.'s Ex. 9, 135.)  Plaintiff has also seen a root canal specialist for numbness she has experienced in her two front teeth since the takedown.  (Pl.'s Ex. 9, at 122-23.)

**City of Wayne Police Department's Investigation and Treatment of Officer Amore**

According to the report of Plaintiff's expert, Police Chief Williams took the following steps once he heard what transpired during Plaintiff's booking: (1) he instructed staff to save all video and audio feed of the incident; (2) he reviewed all available video of the incident; (3) he met with Dispatcher Waldrop who witnessed the incident; (4) he instructed Dispatcher Waldrop and Officer Corney to submit supplemental reports on the incident; and (5) he instructed Reserve Officer Kirschweng to submit a letter describing what he observed during the incident.  (Docket Text # 43, at 24.)[5]  According to the same expert report, Chief Williams testified in his deposition that he reached the conclusion that Officer

---

[5] Plaintiff did not submit to the Court any of the deposition testimony upon which her expert relies for his summary of the City of Wayne's investigation of Plaintiff's booking.

6

Amore did not do anything inappropriate. (*Id.*) According to the same expert report and Officer Amore's deposition testimony, Chief Williams did not interview Officers Amore, Corney, or Kirschweng regarding the incident. (Docket Text #43, at 24; *see also* Pl.'s Ex. 8, at 20.) In April 2008, Officer Amore became a Defensive Tactics Instructor, which was not considered a promotion. (Pl.'s Ex. 4, at 37-39; Pl.'s Ex. 8, at 38.)

**Plaintiff's Criminal Charges and Lawsuit**

Plaintiff was charged with six misdemeanor counts of furnishing alcohol to a minor, one misdemeanor count of assault and battery, and one felony count of assault/resisting/obstructing a police officer. (Pl.'s Ex. 9, at 17; Defs.' Ex. 2B.) She pled no contest in Wayne County Circuit Court to three counts of furnishing alcohol to a minor and one count of disturbing the peace. (Defs.' Ex. 9, at 18.) Plaintiff was sentenced to six months probation, thirty days of treatment at Alcoholics Anonymous, and community service. (Pl.'s Ex. 9, at 18-19.) On December 11, 2007, Plaintiff filed a lawsuit under 42 U.S.C. § 1983 against Officer Amore and the City of Wayne.

## II.     Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

Defendant City of Wayne argues that it is entitled to summary judgment because it maintains policies prohibiting the use of excessive force and has adequately trained its officers in the use of force. Plaintiff does not seem to dispute this, and, in fact, argues at length that Officer Amore's use of force ran "contrary to his training." (Pl.'s Resp. at 22-26.) Plaintiff responds, instead, that the City of Wayne is liable under § 1983 because it ratified Officer Amore's unconstitutional acts by failing to conduct an adequate investigation of the incident and subsequently making Amore a Defensive Tactics Instructor. (Pl.'s Resp. at 27.)

### A. Applicable Legal Standard

Municipal liability under 42 U.S.C. § 1983 may not be based on a theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). A

municipality is not liable under § 1983 "for an injury inflicted solely by its employees or agents." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). "'It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal citations and quotation marks omitted)). Moreover, the policy or custom "'must be the 'moving force of the constitutional violation' in order to establish municipal liability.'" *Id.* (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694)).

A municipality's failure to investigate constitutional deprivations and to discipline offending officers appropriately can ratify the misconduct, giving rise to liability under 42 U.S.C. § 1983. *See, e.g.*, *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985). But to make out such a claim, "the plaintiff 'must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.'" *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)); *see also McClendon v. City of Detroit*, 255 F. App'x. 980, 983 (6th Cir. 2007) (applying 'deliberate indifference' standard to ratification claim); *Black v. City of Memphis*, No. 98-6508, 2000 WL 687683, *3-*4 (6th Cir. May 19, 2000) (same).

**B. Plaintiff's Municipal Liability Claim**

Plaintiff has failed to create a genuine issue of material fact with respect to her claim against the City of Wayne. Specifically, Plaintiff has failed to present sufficient evidence such that a reasonable juror could find that the City of Wayne had a policy or practice of ratifying its police officers' use of excessive force.

9

The two cases upon which Plaintiff relies to support her municipal liability claim — *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1984) and *Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989) — are inapposite.  In *Marchese*, a plaintiff who had earlier threatened an officer was locked in a cell at the Wayne County Sheriff's Department.  *Id.* at 182.  At approximately midnight, a deputy with a key to the cell admitted someone who beat the plaintiff violently with a hard object until he passed out.  *Id.*  The state district court judge ordered the Sheriff to initiate an investigation, but the Sheriff failed to do so.  *Id.* at 184.  The Sixth Circuit held that:

> [t]he Sheriff's subsequent failure to order and direct an investigation which disclosed exactly who were the perpetrators of these brutal violations to the U.S. Constitution and to administer censure and punishment served to confirm the existence of an unstated 'policy' of toleration of illegal brutality toward any country prisoner who had threatened the life of a sheriff's deputy.

*Id.*  While the Sixth Circuit in *Marchese* found the failure to investigate one instance of officer misconduct sufficient to constitute a policy, the conduct was more egregious, and more clearly a violation of the Constitution, than that of Officer Amore.  *Id.* at 188.  Moreover, the failure of the sheriff in *Marchese* even to ascertain *who* committed the battery or used the department's key to admit the perpetrator, stands in sharp contrast to Chief Williams' investigation of Officer Amore's conduct.

In *Leach*, the Sixth Circuit found municipal liability based on a sheriff's failure to investigate a paraplegic inmate's inadequate medical care and to punish those responsible.  891 F.3d at 1248.  The plaintiff in *Leach* was able to demonstrate a policy of "deliberate indifference to the medical needs of paraplegic and physically incapacitated prisoners in the Shelby County Jail" where the sheriff had been aware that "at least 14 other paraplegics had received similar deplorable treatment" and had not taken any action.  *Id.*  By contrast,

Plaintiff has presented no evidence of the Wayne County Police Department's failure to investigate past instances of excessive force such that a reasonable jury could find a policy or custom of deliberate indifference to the constitutional rights of citizens. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) (failure to investigate incident did not give rise to municipal liability when "[plaintiff] has not presented evidence indicating that [sheriff's] decision was either part of a county policy or custom of refusing to investigate meritorious claims or anything other than an isolated, one-time event"); *Dorsey v. City of Detroit*, 858 F.2d 338, 345 (6th Cir. 1988) (finding no municipal liability where "[t]here is no evidence . . . that it was the custom or policy of [the City] to instigate or condone violation of citizens' constitutional rights" and "no suggestion that" the City's adopted "procedures to safeguard citizens' interests during arrests" "were customarily ignored.").

Moreover, unlike in *Marchese* and *Leach*, Chief Williams *did* conduct an investigation; he watched the video footage of Plaintiff's booking, interviewed one witness, and gathered incident reports from the other witnesses. That Plaintiff may consider this investigation insufficient does not evidence deliberate indifference. *See Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) (finding no municipal liability where investigation undertaken); *King v. City of Eastpointe*, 86 F. App'x. 790, 804 (6th Cir. 2003) (finding that "actions by the City do not amount to the 'deliberate indifference' necessary for municipal liability under a theory of ratification" where City investigated incidents); Dyer *v. Casey*, No. 94-5780, 1995 WL 712765, *2 (6th Cir. Dec. 4, 1995) (same); *Daniels v. City of Columbus*, 2002 WL 484622, *6 (S.D. Ohio Feb. 20, 2002) (noting that "courts have been reluctant to impose municipal liability based on a ratification theory" "in cases where an investigation has been conducted").

11

Finally, that Officer Amore became a Defensive Tactics Instructor in April of 2008 is also insufficient to create a genuine issue of material fact as to Plaintiff's municipal liability claim. Chief Williams concluded after investigation that Officer Amore had not violated Plaintiff's constitutional rights. "Whether this determination was correct or not, the actions by the City do not amount to the 'deliberate indifference' necessary for municipal liability under a theory of ratification." *King*, 86 F.App'x at 804 (finding no municipal liability when city concluded after investigation that plaintiffs' rights were not violated).

## IV. Conclusion

For the foregoing reasons, Defendant City of Wayne's motion for summary judgment is GRANTED. And for the reasons stated on the record, Defendant Robert Amore's motion for summary judgment is DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: May 15, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 15, 2009, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager